IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| GERALD A. KELLOGG, an Individual,  )<br>  )<br>                   Plaintiff,  )<br>  )<br>     v.  )<br>  )<br>NIKE, Inc., an Oregon Corporation, and  )<br>NIKE USA, Inc., an Oregon  )<br>Corporation,  )<br>  )<br>                  Defendants.  )<br>  ) | 8:07CV70<br><br>MEMORANDUM AND ORDER |

Plaintiff, Gerald A. Kellogg, filed a complaint against the defendants, NIKE, Inc., and NIKE USA, Inc. (collectively, "Nike"), alleging that Nike's products infringe on his design patent. On October 18, 2007, the court heard the parties' claim construction arguments. For the reasons set forth below, the claim is construed as stated.

The evidence before the court shows that Kellogg submitted a patent application, together with four drawings, to the United States Patent and Trademark Office ("PTO") entitled "vented cap" on December 14, 1995. Filing No. 41, Plaintiff's Evidence Index, Exhibit 2. The application included a statement describing the claim as "a cap with vents formed along the seams extending radially from the center." *Id.* Additionally, the claim stated, "I claim the ornamental design for the <u>VENTED CAP</u> as shown and described herein." *Id.* On June 14, 1996, the PTO issued an Office Action objecting to some informalities in Kellogg's drawings and rejecting the claim as "obvious" under 35 U.S.C. § 103 based on U.S. Patent 4,201,009 for a Combined Hat and Throwable Amusement Device by Len Burridge, Jr. ("Burridge cap"), and U.S. Patent, 5,511,249 for a Cap with Crown Opening by Laura Higgins ("Higgins cap"). Filing No. 55, Defendants' Evidence

Index, Exhibit E. Additionally, the PTO indicated that "since the illustration in the drawing views is its own best description, the statement preceding the claim is not necessary and should be removed. (MPEP 1503.1)." *Id.*

In response to the PTO's concerns, Kellogg added the word "vent" to the text of the description, removed the statement preceding the claim, and responded to the PTO's assertion of obviousness. Filing No. 55, Exhibit F, Amendment dated September 11, 1996. In doing so, Kellogg contrasted his design with the two prior patents. *Id.* Kellogg argued that his design was not obvious because the Higgins cap openings were for a ponytail and the Burridge hat openings were for aerodynamics. *Id.*

The PTO granted the patent as of September 30, 1996; however, it required changes to the drawings. Filing No. 55, Exhibit G, Notice of Allowability. New drawings conforming drawing 3 to reflect 1, 2, and 4 and removing the black areas were provided to the PTO on November 29, 1996. Filing No. 55, Exhibit H, Transmittal of New Drawings.

In 2004, Kellogg observed what he believes to be his design on baseball caps produced by Nike and this action ensued. The parties submitted briefs in support of their respective claim constructions and a hearing was held on October 18, 2007, with both sides presenting arguments.

## ANALYSIS

A design patent is different from a utility patent. Design patents are covered under Chapter 16 of the Patent Act, 35 U.S.C. § 171. The statute provides:

> Whoever invents any new, original and ornamental design for an article of manufacture may obtain a patent therefor, subject to the conditions and requirements of this title.

> The provisions of this title relating to patents for inventions shall apply to patents for designs, except as otherwise provided.

*Id.* Also, design patents are numbered differently and are granted for fourteen years, as opposed to twenty, years. 35 U.S.C. § 173. However, just as with utility patents, in determining whether a design patent has been infringed the claim must be properly construed by the court to determine is meaning and scope. *Elmer v. ICC Fabricating, Inc.*, 68 F.3d 1571, 1577 (Fed. Cir. 1995), *citing Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 976 (Fed. Cir. 1995). Claim construction is conducted a matter of law. *Markman*, 52 F.3d at 979.

In determining the proper construction of a claim, the court has numerous sources that it may properly utilize for guidance. These sources include both intrinsic evidence (e.g., the patent specification and file history) and extrinsic evidence (e.g., expert testimony). *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996). In most situations, an analysis of the intrinsic evidence alone will resolve any ambiguity in a disputed claim term. In such circumstances, it is improper to rely on extrinsic evidence. *Vitronics Corp.*, 90 F.3d at 1583 (citations omitted).

"Design patents typically are claimed as shown in drawings." *Arminak and Assocs., Inc. v. Saint-Gobain Calmar, Inc.,* 501 F.3d 1314, 1319 (Fed. Cir. 2007). Claim construction by a court is adapted accordingly. *Id.* (*quoting Goodyear Tire & Rubber Co. v. Hercules Tire & Rubber Co.,* 162 F.3d 1113, 1116-17 (Fed. Cir. 1998). In construing a claim, it is the district court's task to describe the drawings of the patents in suit. *Durling v. Spectrum Furniture Co.*, 101 F.3d 100, 103 (Fed. Cir. 1996).

"In construing a design patent claim, the scope of the claimed design encompasses its visual appearance as a whole, and in particular the visual impression it creates." *Contessa Food Prods. Inc. v. Conagra, Inc.*, 282 F.3d 1370, 1376 (Fed. Cir. 2002) (internal quotation marks omitted).  However, "[a] design patent only protects the novel, ornamental features of the patented design." *OddzOn Prods., Inc. v. Just Toys, Inc.,* 122 F.3d 1396, 1405 (Fed. Cir. 1997). Therefore, "[w]here a design contains both functional and non-functional elements, the scope of the claim must be construed in order to identify the non-functional aspects of the design as shown in the patent." *Id.* A court's claim construction of a design patent claim therefore properly limits the scope of the patent to the overall ornamental visual impression it creates, rather than to the broader general design concept.  *Durling*, 101 F.3d at 104.

Case law "does not prohibit detailed claim construction of design patent drawings. It merely disapproves claim construction that goes beyond the novel, nonfunctional ornamental features visually represented by the claimed drawings or that fails to encompass the claimed ornamental features of the design as a whole." *Id.*  Nevertheless, "a district court need not always verbally construe at length a design patent's drawings." *Minka Lighting, Inc., v. Craftmade Int'l, Inc.*, 93 Fed. Appx. 214, 215 (Fed. Cir. January 16, 2004) (not designated for publication).  "The infringement analysis essentially involves comparing the drawings to an accused device; a verbal description of the drawings does not necessarily aid such a comparison."  *Id.*

In reviewing the claim construction in other design patent cases, the court finds the constructions used in *OddzOn* and *Contessa* helpful in determining the extent to which the court should verbalize the claim construction in this matter.  In *OddzOn*, the court

4

described the claim as "a ball shaped like a football, with a slender, straight tailshaft projecting from the rear of the football. . . ." *OddzOn,* 122 F.3d at 1400. In *Contessa*, the Federal Appeals Court found that the simple description of "a tray of a certain design, as shown in Figures 4-5, containing shrimp arranged in particular fashion, as shown in Figures 1-3" was a proper claim construction for the shrimp tray at issue. *Contessa*, 282 F.3d at 1376.

The court finds that an extensive verbal claim construction would not be helpful to the jury in this case. The court further finds that the use of extrinsic evidence is not necessary to the claim construction in this matter. Thus, the court determines the proper claim construction this case is as follows:

> An ornamental design for a vented baseball-styled cap as defined by the overall visual impressions as shown in figures 1 through 4. The cap has a hemispherical cap portion with a brim extending generally from one side of the cap portion. The hemispherical cap portion has four oblong-shaped vents that have sharply narrowing v-shaped ends. The vents are symmetrically shaped and extend along the seams of the panels of the cap in a generally "X"-shaped fashion with the center of the "X" being located at the top center of the cap.

SO ORDERED.

DATED this 16th day of November, 2007.

BY THE COURT:

s/ Joseph F. Bataillon
Chief United States District Judge