IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

GERALD A. KELLOGG, an Individual,   )
                                      )
               Plaintiff,       )             8:07CV70
                                        )
               v.               )
                                        )
NIKE, INC., an Oregon Corporation,   )      MEMORANDUM AND ORDER
and NIKE USA, INC., an Oregon      )
Corporation,                       )
                                        )
              Defendants.     )
_____)

     This matter is before the court on the following motions:  (1) the plaintiff's renewed motion for judgment as a matter of law, or, in the alternative, for a new trial, Filing No. 328; (2) plaintiff's restricted motion for attorney fees and to alter or amend the judgment, Filing No. 330; (3) defendant's motion to strike portions of plaintiff's restricted reply in support of motion for attorney fees and to alter and amend the judgment, Filing No. 343; and (4) plaintiff's motion to review the actions of the taxation clerk, Filing No. 351.

**I.  Background**

     This action for infringement of a design patent was tried to a jury from September 22, 2008, to September 25, 2008.  On September 29, 2008, the jury returned a verdict in favor of defendants.  Filing No. 314.  The court entered judgment in favor of Nike and Nike thereafter submitted its bill of costs in the amount of $64,941.08.  Filing No. 336.  The clerk of court awarded costs in the amount of the amount of $61,651.94.  Filing No. 350.

     Earlier in the litigation, in the *Markman* proceedings in this case, Kellogg advocated a claim construction focusing on the ornamental design as shown on a baseball-style hat, rather than on the whole hat.  Filing No. 40, Brief at 9.  Nike, on the other hand, advocated

a claim construction that "reflected each of the numerous features" of the hat and included language that the Kellogg's '190 Patent depicted a "boxy," "structured" cap with a "stiff crown" and "[m]ultiple rows of stitching on the bill," a hat with symmetrical "marquise-shaped" openings, a "top button" and an "adjustment strap with projecting lugs." Filing No. 55, Brief at 6, 11, 18.  The court construed the '190 Patent as follows:

> An ornamental design for a vented baseball-styled cap as defined by the overall visual impressions as shown in figures 1 through 4. The cap has a hemispherical cap portion with a brim extending generally from one side of the cap portion. The hemispherical cap portion has four oblong-shaped vents that have sharply narrowing v-shaped ends. The vents are symmetrically shaped and extend along the seams of the panels of the cap in a generally "X"-shaped fashion with the center of the "X" being located at the top center of the cap.

Filing No. 107, Memorandum and Order at 5.

Nike asserted a counterclaim against Kellogg premised on the allegation that the '190 Patent was invalid.  Filing No. 18, Counterclaim.  Kellogg's affirmative defenses to the Counterclaim were premised on Nike's prosecution of a nearly-identical design patent, the Nike '178 Patent, which effectively foreclosed its invalidity arguments.  Filing No. 19, Reply to counterclaim.  The '178 Patent was issued after Kellogg's '190 Patent, and the '190 Patent was not disclosed in Nike's application for the '178 Patent.   *See* Filing No. 126, Order at 1.  Nike continued to prosecute its counterclaim until the eve of trial.  Eleven days before the trial was to begin, Nike moved to dismiss its counterclaim of invalidity with prejudice.  Filing No. 284.  The court granted the motion, over Kellogg's objection.  Filing No. 285.

The course of this litigation was marked with discovery disputes.  *See, e.g.*, Filing No. 126, Order on Motion for a Protective Order (noting Nike's failure to comply with rule

34).    During the course of the litigation, Nike made several specious and fallacious assertions. *See, e.g.*, Filing No. 188, Motion to Strike; Filing No. 249, Memorandum and Order at 4, 9, (noting, inter alia, that Nike's position was "untenable," its submissions "equally deficient," its arguments were "without merit," its legal position was "misplaced," and finding Nike's mischaracterization of the magistrate judge's ruling "disingenuous at best").    Nike continued to assert that the '178 Patent was irrelevant long after the magistrate judge had ruled to the contrary.   See Filing No. 126, Order at 16.   Nike's retained expert with respect to invalidity essentially admitted at his deposition to a complete lack of personal or expert knowledge concerning any standard of validity.[1]  Filing No. 210, Ex. 2, Deposition of Jerry Boquist.

Shortly before trial, the court generally sustained most of Kellogg's motion in limine, ruling that the defendant should limit evidence and argument to conform to the court's claim construction order.  Filing No. 286, Memorandum and Order at 7.  The court found any argument or evidence that was inconsistent with the court's claim construction would be irrelevant.  *Id.* at 2.  At a hearing immediately before the commencement of the trial, counsel for Nike asked for clarification of the court's order on the motion in limine. Filing No. 323, Trial Transcript ("Tr."), Vol. I at 65-67.  The following colloquy ensued:

> [NIKE COUNSEL]: What about Nike's hats? Can I talk about the overall visual impression of Nike hats?
> THE COURT: I think you can. I think you can do that.
> [NIKE COUNSEL]: Okay.
> THE COURT: Without saying that --
> [Kellogg's counsel]: Of the accused hats?

---

[1]During a conference call with the court, Nike essentially conceded that Boquist's report and testimony were unsubstantiated in volunteering to dismiss its invalidity counterclaim, if it meant that Kellogg could not use Boquist's testimony in support of its position at trial.

3

THE COURT: Right, the accused hats, without talking about whether this, Exhibit 1 [the '190 patent], is a trucker hat, or it's a golf hat, or a structured hat.

[NIKE COUNSEL]: So the focus of our discussion will be on Nike's hats, about the overall impression of the Nike hats.

THE COURT: As it relates to the design in question.

[NIKE COUNSEL]: Okay.

*Id.*, Tr. at 67:9–22 (emphasis added).

The parties submitted proposed jury instructions before trial. Filing Nos. 291 & 293. At the instruction conference, Nike argued for a proposed jury instruction that would set out two elements for a claim of infringement—the point of novelty test and the ordinary observer test.[2]  Filing No. 323, Transcript of Trial ("Tr."), Vol. I at 15.  Nike had advocated the opposite position in an amicus brief filed in a case then pending before the Federal Circuit Court of Appeals.[3]  *See id.* at 17-18.  On the morning of the trial, the Court of Appeals for the Federal Circuit ("Federal Circuit") decided that case, *Egyptian Goddess, Inc. v. Swisa, Inc.*, 543 F.3d 665 (Fed. Cir. 2008) (en banc).  The Federal Circuit abrogated the "point of novelty" test and held that the "ordinary observer test is the controlling test for design patent infringement." *Id.* at 678.  The Federal Circuit found that "a test that asks how an ordinary observer with knowledge of the prior art designs would view the differences between the claimed and accused designs is likely to produce results more in line with the purposes of design patent protection."[4]  *Id.* at 677.   In accord with the

---

[2]The individual characteristics and details of the hat (shape, fabric, stitching, vents, etc.) would arguably relate to the point of novelty test.

[3]Although Nike was represented by different counsel in the two actions, the court is troubled by Nike's willingness to take inconsistent legal positions when it suits its interest.

[4]The Federal Circuit also found that a design is better represented by an illustration "than it could be by any description," and stated "[g]iven the recognized difficulties entailed in trying to describe a design in words, the preferable course ordinarily will be for a district court not to attempt to 'construe' a design patent claim by providing a detailed verbal description of the claimed design." *Id.* at 679.  However, while warning

4

*Egyptian Goddess* decision, the court instructed the jury in the initial instructions that in order to prevail on his claim of design patent infringement, the plaintiff must prove the following element:

> That in the eye of the ordinary observer familiar with the prior art, giving such attention as a purchaser usually gives, the two designs are substantially the same and the resemblance is such as to deceive such an observer and sufficient to him to purchase the alleged infringing product supposing it to be the device covered by the patent.

Filing No. 318, Initial Jury Instructions, Instruction No. 18; *see Egyptian Goddess*, 543 F.3d at 670 (*citing Gorham Co. v. White*, 81 U.S. 511, 528 (1871)).  The court overruled Kellogg's proposal to include language in the elements instruction stating that "design patent infringement does not require the drawings and accused hats to be identical." *See* Filing No. 293, Kellogg's Supplemental Proposed Jury Instructions.  The court's claim construction was also provided to the jury in the court's initial jury instructions.  Filing No. 316, Instruction No. 17.

During voir dire, after having been specifically instructed at the motion in limine conference that references to the type of hat or to other specific details of the hat that were contrary to the court's claim construction would be irrelevant, Nike's counsel mentioned "trucker hats" and "closure mechanisms" to the potential jurors.  Filing No. 327, Transcript of Voir Dire Proceedings at 81, 97.  During Nike's opening statement, the court sustained an objection to comments alluding to the invalidity of Kellogg's patent and stated, at a

---

of "the risk of placing undue emphasis on particular features of the design and the risk that a finder of fact will focus on each individual described feature in the verbal description rather than on the design as a whole," the court emphasized that "a district court's decision regarding the level of detail to be used in describing the claimed design is a matter within the court's discretion, and absent a showing of prejudice, the court's decision to issue a relatively detailed claim construction will not be reversible error." *Id.* at 679-80. Because the court's claim construction was the law of the case and would aid the jury, the court let the claim construction stand.

sidebar, "the bottom line is I've already construed that Mr. Kellogg's patent is a good patent, and you cannot attack the validity of his patent, and it sounds to me like that's what you're doing, and that's why I'm sustaining the objection." *Id.* at 99. Shortly thereafter, counsel alluded again to invalidity of Kellogg's patent, prompting the court to interject, strike counsel's comment and tell the jury that the patent was valid. *Id.* at 100. Nike's counsel was admonished to structure his opening statement accordingly. *Id.* at 100-01. The court also sustained objections to Nike's opening statement as argumentative and Nike was later admonished by the court for arguing. *Id.* at 109, 111, & 113.

During its case in chief, Kellogg interposed no objections to several questions posed to Nike designer Jon Taguchi about specific differences in detail between Kellogg's patent drawing and Nike's accused hats. *See id.* at 302-04 (describing mesh vents and wicking fabric); 306-308 (describing lightweight fabric and recycling etc.); 312-13 (regarding placement of vents and seams). Kellogg did object to a question concerning multiple-paneled construction of a hat. *Id.* at 307. The following colloquy occurred:

> [NIKE COUNSEL]: Is the hat multiple paneled construction?
> [KELLOGG'S COUNSEL]: We're going to object to relevancy and contrary to claim construction.
> THE COURT: Mr. [Nike's counsel]?
> [NIKE COUNSEL]: We're talking about the features of the hat, the appearance of the hat having panels in it.
> THE COURT: I think this goes to the damages issue to determine–this goes to the damages issue to consider what goes into the cost in marketing of any particular model and how that then applies to royalties or not royalties. So that's why I believe it's relevant, but it's not relevant with respect to claim construction. You may continue.

*Id.* at 308. The court further specifically cautioned the jury:

> THE COURT: I'm going to overrule the objection, ladies and gentlemen.

> At this juncture we're not talking about the differences between the hats as much as we're talking about, if you get to the damages issue, how the design is valued in relation to the complete product and what the royalty might or might not be worth.  At least that's the only thing that I think is relevant to this discussion.  So you may continue. You may have a continuing objection on this issue. . . .

*Id*. at 309. Nike persisted as follows:

> [NIKE COUNSEL]:  Did Mr. Kellogg come up with your design before you?
> MR. TAGUCHI:  This design is different from my design.
> [NIKE COUNSEL]:  How is it different?
> MR. TAGUCHI: This is a whole hat, and it—in the back strap, you can see it's a plastic snap back, which is really common on trucker caps and lots and lots of caps that are—
> [KELLOGG'S COUNSEL]:  Your Honor, I'm going to object.

*Id*. at 319.  In the presence of the jury, the court stated:

> THE COURT: I'm going to sustain the objection. This is not claim construction.
> The witness is not supposed to testify about the difference in the hat, because this is not about the hat; it's about the design.  So the objection is sustained and his testimony is stricken on this issue.

*Id*.  The court permitted questions on products in Nike catalogs, and admitted the catalogs in evidence, stating "[w]ell, I think this goes to the issue of damages, not to the issue of whether or not the patent has been violated, and so I'll admit the exhibit over objection."

*Id.* at 320-21.  The court later cautioned the jury:

> THE COURT: . . . Ladies and gentlemen, this goes just to the issue of damages.  In other words, Nike has a line of apparel and that might tell you how much this design patent might be worth in the event you think that it has been infringed. So go ahead.

*Id.* at 322.  The court also sustained relevance objections based on claim construction during the questioning of Mr. Green, a Nike product developer.  Filing No. 325, Tr., Vol. III at 359.

7

Ms. Julianne Davis, the Nike attorney who corresponded with Mr. Kellogg about Nike's alleged infringement of his patent, also testified at the trial. *Id*. at 408-519. In the presence of the jury, counsel for Nike asked Ms. Davis to read from a letter she had written to Mr. Kellogg regarding his accusations of infringement. *Id*. at 461-62. Ms. Davis replied:

> MS. DAVIS: [reading from Ex. 265] "There can be no mistake that Mr. Kellogg claimed the entire design of the vented cap as shown and described in figures one through four of the '190 patent."
> [Nike's Counsel]: The entire design?
> MS. DAVIS: The entire design.
> [KELLOGG'S COUNSEL]: Objection, Your Honor, we're going into claim construction, relevance.
> THE COURT: I'll sustain that objection.

*Id*. at 462. Immediately thereafter, Nike's counsel continued to pursue the same line of questioning and Kellogg's objection was again sustained. *Id*. at 462-63. Again, Nike's counsel persisted, inquiring about specific details of the accused hats and again the court sustained the objection. *Id*. Nike argued that the questioning related to willfulness, to which the court responded:

> THE COURT: Yes, but this is–this case is about a design; not about a cap.
> Her claim construction is inconsistent with the claim construction the court has provided the jury and you're asking her to reiterate an incorrect claim construction, and that is irrelevant.

*Id*. at 463. The court denied counsel's request for a sidebar and told counsel that motions would be addressed outside the presence of the jury at the next break. *Id*. at 462-63. Later, outside the presence of the jury, Nike asserted that the court's statement that Ms. Davis's claim construction was incorrect created "significant unfair prejudice" to Nike and reiterated its argument that the testimony related to the issue of good-faith, not claim construction. *Id*. at 473. The court stated:

8

THE COURT: My personal opinion is she doesn't have good faith.

You know what this is about, and she knows what this is about, and mostly it's about confusing the issues in this case.

This case is not about a baseball cap; it's about a design on a baseball-style cap.

And you have persisted, and Nike has persisted, in conflating those two issues.

And there's an objection, and it's a legitimate objection on this almost every time it's raised, and I sustain it and I'm getting tired of doing it.

And there is probably going to be an instruction that clarifies that to the jury.

*Id*. at 473.  Nike's counsel persisted in arguing its objection, prompting the court to respond:

THE COURT: But she keeps stepping over the line with respect to the claim construction.

And you're trying to make her into an expert on claim construction and that's where you're getting into trouble as far as relevance is concerned and that's why I said what I did.

I probably shouldn't have used the word "wrong," but her claim construction is incorrect. That's what I tried to convey to the jury.

[NIKE COUNSEL]: I understand, Your Honor. Her claim construction is inconsistent with yours.

THE COURT: So it's incorrect.

[NIKE COUNSEL]: But, Your Honor, the fact of whether she is correct or not does not go to the issue of willfulness because it would be her state of mind.

THE COURT: Her state of mind—I'm not going to get into an argument with you on this.

If you want me to do a curative instruction with the jury, I'll be willing to consider it.

[NIKE COUNSEL]: I would like that very much, Your Honor.

THE COURT: You need to submit it and we'll talk about it.

*Id.* at 474.  Nike later declined to offer a curative instruction, stating "we do not believe any curative instruction would be sufficient," and moved for a mistrial.  Filing No. 326, Tr., Vol. IV at 586.  The court overruled the motion, stating:

THE COURT: Well, let me quote from the—let me quote from the MPEP, Section 1502, which is on the first page, and it says Definition of a Design:  In a design patent application, the subject matter which is claimed

is the design embodied in, or applied to, an article of manufacture, or portion thereof, and not the article itself.

You yayhoos have been doing this from the very beginning of this case, conflating the article with the design. And you're trying to do it to the jury. And the lawyer that sat in this chair from Nike was doing the same thing. Okay? So I don't want to hear anything about it.

*Id.* at 586-87.

During the examination of Laurence Bond, a patent attorney who had applied for and obtained patents for Nike products, including the '178 patent, Nike's counsel attempted to elicit an expert opinion from a witness who had not been named as an expert. *Id.* at 617. The court sustained an objection. *Id.*

Nike's motion and renewed motion for judgment as a matter of law were based on its argument that several differences in the details of Nike's hats distinguished them from Mr. Kellogg's design creating a "significant different overall impression such that no reasonable jury would have a legally sufficient evidentiary basis to find for the plaintiff in the issue of infringement." *See id.* at 527-31. Those differences included: mesh fabric as opposed to openings, lack of symmetry, a "shard" shape rather than a marquis shape to the openings, a high profile to the hat, shaping around the ear of the hat, a six-panel configuration rather than a five-panel configuration, a contrasting border, a lower crown, lack of stitching, different back closure. *Id.*

In closing argument, Nike counsel stated:

[NIKE COUNSEL]: What we have a problem with is how his lawyers have done this, because it's not enough to say you infringed my patent, you owe me some money.

As [Mr. Kellogg's counsel] said, it's not about the money; it's all about the money, because along this path to that money they have thrown along the way reputations of good people.

They didn't need to do that, ladies and gentlemen. If their case was so strong—

[KELLOGG'S COUNSEL]:   Objection, Your Honor, I think this is improper as to the case in chief, unless they submit it.
[NIKE COUNSEL]:  It's closing argument.
THE COURT:  I know it's closing argument, and in the old days the judge used to leave when the closing argument was done, but it isn't the old days, and I think I'm going to sustain the objection. I think that you're impugning folks that are not folks that need to be impugned so I'm going to sustain the objection.

Filing No. 356, Tr., Vol. V at 783.

The jury was instructed, both in the initial and closing instructions, that "[t]he claim of a design patent is shown in drawings."  *See* Filing No. 316, Initial Jury Instructions, Instruction No. 17; Filing No. 318, Final Jury Instructions, Instruction No. 17.  The court further instructed the jury the court was required to provide a description, in words, of the design that is claimed in the design patent, known as the claim construction.  *Id.*  The court's description included the phrase "[a]n ornamental design for a vented baseball-style cap as defined by the overall visual impressions as shown in figures 1 through 4" and a copy of the design patent was given to the jury with the instructions.  *Id.*  In the elements instruction, the court instructed the jury that "[t]o determine infringement, you must compare the accused products with the illustrated design in the plaintiff's design patent."  *Id.*, Instruction No. 18.  At the end of trial, the jury was told that the plaintiff must prove "[t]hat in the eye of the ordinary observer . . . the two <u>designs</u> are substantially the same and the resemblance is such as to deceive such an observer and sufficient to him to purchase the alleged infringing product supposing it to be the patented <u>design</u>" (emphasis added).[5]  Filing No. 318, Final Jury Instructions, Instruction No. 18.

---

[5]The instruction given to the jury at the end of trial clarified the phrase "purchase the alleged infringing product supposing it to be a device covered by the patent" by changing it to "supposing it to be the patented design."  *Compare* Filing No. 318, Final Jury Instructions, Instruction No. 18 *with* Filing No. 316, Initial Jury instructions, Instruction No. 18.  The parties agreed to the change.  Filing No. 326, Tr. Vol. IV at 723-24.

11

Without objection from either party, the court also added a definition of the word "design" to the instructions given at the end of trial. Filing No. 318, Final Jury Instructions, Instruction No. 24; see Filing No. 326, Tr. Vol. IV at 724. The definition provided: "[i]n a design patent application, the subject matter which is claimed is the design embodied in or applied to an article of manufacture (or portion thereof) and not the article itself." Filing No. 318, Final Jury Instructions, Instruction No. 24.

During their deliberations, the jury communicated the following question to the court: "What does, quote, substantially the same, closed quote, mean? Explain as to, quote, deceive such an observer, close quote." Filing No. 356, Tr. Vol. V at 809. After a discussion with counsel for both parties, the court communicated the following response to the jury: "Please re-read the instructions provided." *Id.* at 811. Neither party objected to this course of action. *Id.* at 810-11.

The jury later claimed to be deadlocked, and asked how much longer they "should continue to argue with no changing sides." *Id.* at 812. The parties agreed that the court should give the jury "an Allen charge of some kind" telling them that "if they don't come to a decision, the parties have to come back and do this all other again to another set of twelve people that aren't really going to be any different than they are, and that's what we have to tell them, and ask them to go back and tell us whether or not they think they can come to a decision." *Id.* at 812. The court again informed the jury to follow the instructions, to not single out any part of any instruction, and that the instructions are all equally important. *Id.*, Tr. at 816-17. Kellogg's counsel proposed addition of language

stating that the "two patents do not have to be identical," but the court was not inclined to revisit the jury's first question.[6]  *Id.* at 813.

## II.  Discussion

### A.  Law

Under Fed. R. Civ. P.  50(a)(1), if a party has been fully heard on an issue at trial, and "the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue," the court may resolve the issue against the party and grant a motion for judgment as a matter of law.  Fed. R. Civ. P. 50(a)(1).  If the district court does not grant the motion for judgment as a matter of law under Rule 50(a), "the court is considered to have submitted the action to the jury subject to the court's later deciding the legal questions raised by the motion."  Fed. R. Civ. P. 50(b).   The grounds for the renewed motion under Rule 50(b) are limited to those asserted in the earlier Rule 50(a) motion.  *Hinz v. Neuroscience, Inc.,* 538 F.3d 979, 983-84 (8th Cir. 2008) (stating that, by definition, a Rule 50(b) motion is a renewal of a prior Rule 50(a) motion made at the close of the evidence and as such is limited to those issues raised in the previous motion).

The grant or denial of a motion for judgment as a matter of law ("JMOL") is a procedural issue not unique to patent law, reviewed under the law of the regional circuit in which the appeal from the district court would usually lie.  *Lucent Technologies, Inc. v. Gateway, Inc.,* — F.3d —, 2009 WL 2902044, *3 (Fed. Cir. Sept. 11, 2009).  In the Eighth

---

[6]At the instruction conference at the end of trial, Kellogg renewed the objection to the court's essential element instruction he had made at the beginning of trial.  Filing No. 326, Tr. Vol. IV at 722-24.  He had proposed addition of language to the effect that "similar does not mean identical."  *See* Filing No. 293, Kellogg's Supplemental Proposed Jury Instructions.

Circuit, in considering a motion for judgment as a matter of law, the court views the evidence most favorably to the nonmoving party and draws all reasonable inferences in its favor. *Hinz v. Neuroscience, Inc.*, 538 F.3d at 984. If the evidence, viewed under that standard, would permit reasonable jurors to differ in the conclusions they draw, judgment as a matter of law cannot be granted. *Id.* "However, 'when the record contains no proof beyond speculation to support the verdict, then judgment as a matter of law is appropriate.'" *Id.* (quoting *Liberty Mut. Fire Ins. Co. v. Scott*, 486 F.3d 418, 422 (8th Cir. 2007).

A motion for a new trial is similarly governed by the law of the regional circuit. *Union Carbide Chems. & Plastics Tech. Corp. v. Shell Oil Co.*, 308 F.3d 1167, 1182 (Fed. Cir. 2002). Under Fed. R. Civ. P. 59(a)(1)(A), "[w]hen considering a motion for a new trial, the key question is whether a new trial is necessary to prevent a miscarriage of justice." *Maxfield v. Cintas Corp., No. 2*, 563 F.3d 691, 694 (8th Cir. 2009); *see Rustenhaven v. American Airlines, Inc.*, 320 F.3d 802, 806 (8th Cir. 2003) (holding that a motion for new trial is appropriately granted if the verdict is against the weight of the evidence and if allowing it to stand would result in a miscarriage of justice). On a motion for new trial, the district court is entitled to interpret the evidence and judge the credibility of witnesses, but it may not usurp the role of the jury by granting a new trial simply because it believes other inferences and conclusions are more reasonable. *Id.* A new trial based on insufficiency of evidence should be granted only if the evidence weighs heavily against the verdict. *Ouachita Nat. Bank v. Tosco Corp.*, 686 F.2d 1291, 1294 (8th Cir. 1982). The existence of substantial evidence does not prevent a court from granting a motion for a new trial if the verdict is against the clear weight of the evidence. *Id.*

14

A new trial based on attorney misconduct for violation of an order may only serve as a basis for a new trial when the order is specific in its prohibition and the violation is clear.  *Black v. Schultz*, 530 F.3d 702, 706 (8th Cir. 2008) (involving the violation of an order granting a motion in limine).  Further, a party is entitled to a new trial only where the violation constitutes prejudicial error or results in the denial of a fair trial.  *Id*.  Prejudicial error "'is error which in all probability produced some effect on the jury's verdict and is harmful to the substantial rights of the party assigning it.'"  *Id*. (*quoting Pullman v. Land O'Lakes, Inc.*, 262 F.3d 759, 762 (8th Cir. 2001); *see also Littleton v. McNeely,* 562 F.3d 880, 889 (8th Cir. 2009) ("[W]hen a new trial motion is based on improper closing arguments, a new trial should be granted only if the statements are 'plainly unwarranted and clearly injurious' and 'cause prejudice to the opposing party and unfairly influence a jury's verdict.'").

In a patent case, attorney fees can be awarded in an exceptional case.  35 U.S.C. § 285.  Review of whether a case is exceptional under 35 U.S.C. § 285 is a matter of Federal Circuit law.  *Power Mosfet Technologies, L.L.C. v. Siemens AG*, 378 F.3d 1396, 1407 (Fed. Cir. 2004).  The Federal Circuit reviews the court's findings of fact for clear error and its legal conclusions de novo.  *Id*.  The determination of whether a case is exceptional and, thus, eligible for an award of attorney fees under § 285 is a two-step process: (1) the district court must determine whether there is clear and convincing evidence that a case is exceptional, a factual determination reviewed for clear error, and (2) if so, the district court must then determine in its discretion whether an award of attorney fees is justified.  *Revolution Eyewear, Inc. v. Aspex Eyewear, Inc.*, 563 F.3d 1358, 1372-73 (Fed. Cir. 2009); *Beckman Instruments, Inc. v. LKB Produkter AB*, 892 F.2d 1547,

1551 (Fed. Cir. 1989) (noting that the decision to award attorney fees in an exceptional patent infringement case is discretionary, but the finding that the case is "exceptional" is a finding of fact that is reviewable under the clearly erroneous standard).  The types of conduct that can provide the basis for a finding that a case is exceptional include vexatious or unjustified litigation, misconduct during litigation, and frivolous suits.  *Beckman Instruments, Inc.,* 892 F.2d at 1551; *E-Pass Technologies, Inc. v. 3Com Corp.*, 559 F.3d 1374, 1381 (Fed. Cir. 2009) (affirming a fee award based on "ever-changing allegations," "shifting legal theories," and a strategy to delay and obfuscate).  "When the attorney fees under 35 U.S.C. § 285 are awarded solely on the basis of litigation misconduct, the amount of the award must bear some relation to the extent of the misconduct."  *Power Mosfet Techs.,* 378 F.3d at 1415

Under the Federal Rules, "an action may be dismissed at the plaintiff's request only by court order, on terms that the court considers proper," unless a stipulation of dismissal is signed by all parties or the opposing party has not served an answer or motion for summary judgment.  Fed. R. Civ. P. 41 (a)(1)(A) & (B).  The purpose of the "terms and conditions" clause is to protect a defendant from any prejudice or inconvenience that may result from a plaintiff's voluntary dismissal.  *GAF Corp. v. Transamerica Ins. Co.*, 665 F.2d 364, 367 (D.C. Cir. 1981).  Attorney fees and costs are commonly awarded as one such "term and condition" for a voluntary dismissal, for those costs were undertaken unnecessarily in such a case.  *Id.*; *Taragan v. Eli Lilly and Co.*, 838 F.2d 1337, 1340 (D.C. Cir. 1988).

Taxation of costs in favor of a prevailing party is authorized by 28 U.S.C. § 1920 and governed by Federal Rule of Civil Procedure 54(d).  *Craftsmen Limousine, Inc. v. Ford*

*Motor Co.*, --- F.3d ----, 2009 WL 2748365 (8th Cir. Sept. 1, 2009). Under Rule 54(d) "[a] prevailing party is presumptively entitled to recover all of its costs." *Thompson v. Wal-Mart Stores, Inc.*, 472 F.3d 515, 517 (8th Cir. 2006) (quotation omitted). Whether a party is prevailing within the meaning of Rule 54 is a matter of Federal Circuit law and is reviewed de novo. *Power Mosfet Techs.*, 378 F.3d at 1407. The district court's actual decision regarding an award of costs, however, is reviewed under the law of the regional circuit. *Id.* In the Federal Circuit, the dismissal of a party's suit with prejudice is tantamount to a judgment on the merits for the opposing party, thereby rendering it the prevailing party. *Highway Equip. Co., Inc. v. FECO, Ltd.*, 469 F.3d 1027, 1035 (Fed. Cir. 2006); *Power Mosfet Techs.*, 378 F.3d at 1416 (holding that a patent infringement defendant obtained a disposition on the merits for purposes of Fed. R. Civ. P. 54(d)(1) where patentee voluntarily dismissed its infringement claim with prejudice).

However, even if a party "prevails" within the meaning of this definition, "the district court judge retains broad discretion as to how much to award, if anything." *Manildra Mill. Corp. v. Ogilvie Mills, Inc.*, 76 F.3d 1178, 1183 (Fed. Cir. 1996); *Marmo v. Tyson Fresh Meats, Inc.*, 457 F.3d 748, 762 (8th Cir. 2006) ("Rule 54(d) presumes an award of costs to the prevailing party; however, the district court has substantial discretion in awarding costs."). Rule 54(d) also permits the district court to exercise its discretion and refuse to award costs to the prevailing party. *Sheets v. Yamaha Motors Corp.*, 891 F2d 533, 539 (5th Cir. 1990). Furthermore, in exceptional circumstances, the district court may actually tax costs against the prevailing party as a sanction. *See, e.g., Weaver v. Bowers,* 657 F.2d 1356, 1362 (3d Cir. 1981) (en banc) (permitting the taxing of costs against prevailing parties due to their inexcusable delay in waiting to raise a decisive issue until a post-trial

motion); _Thompson v. Sun Oil Co._, 523 F.2d 647, 650 & n.4 (8th Cir. 1975) (taxing appellate costs against prevailing party because of lack of good faith and evasiveness during the discovery process).

### B.  Analysis

#### 1.  Motion for JMOL/New Trial

The plaintiff argues that the jury's verdict is not supported by legally sufficient evidence and Kellogg is entitled to judgment as a matter of law.  In support of its contention that there is no evidence to support the verdict, Kellogg relies on the testimony of Nike's own witnesses for the proposition that Kellogg established that as a matter of law that Nike's products infringed the design patent and no reasonable juror could have found it did not.[7]  Kellogg argues that Nike failed to adduce any evidence that would support the jury's verdict of non-infringement.  He characterizes the evidence presented by Nike as self-serving testimony designed to "contradict and mock the court's claim construction" and argues that the evidence was irrelevant and improper.

The court finds the evidence, viewed in the light most favorable to Nike, does not support that conclusion.  The evidence was sufficient to present the issue of infringement to the jury for determination of whether an ordinary observer would have found the accused hats similar to the patented design.  This is a quintessential jury question.  Based on the evidence presented to the jury, a reasonable juror, comparing Kellogg's patented design to the four-vent design on Nike's accused hats, could have found that the two designs were

---

[7]This evidence includes Mr. Taguchi's acknowledgment that the accused hats contained the design elements described in the court's claim construction.  See Filing No. 324, Tr. Vol. II at 284-88, 314-15. Kellogg also relies on product merchandiser Erika Kelley's admission that the accused hats incorporated four vents in an X-shaped pattern, demonstrating good symmetry and balance.  Filing No. 325, Tr. Vol. III at 377-78.

not "substantially the same and the resemblance is such as to deceive such an observer and sufficient to him to purchase the alleged infringing product supposing it to be the patented design," as instructed in the jury instructions.[8]

Nike also assigns error to the court's refusal to instruct the jury that "substantially the same" does not mean "identical." Though Kellogg's proposed instruction may have been a correct statement of the law, the court finds that such an instruction was unnecessary. The court's instructions, taken as a whole, conveyed that message to the jury.

Kellogg's motion for new trial is premised on its assertions of attorney misconduct. He argues that counsel for Nike blatantly disregarded this court's claim construction and injected prejudicial questioning and commentary into the record. He contends that this misconduct infected the proceedings and created prejudicial error that resulted in a miscarriage of justice.

The court agrees that Nike repeatedly attempted to reintroduce and reargue theories rejected by the Court in the claim construction order and the order on motions in limine. The conduct proscribed by those orders was clear. Nike's misconduct occurred throughout the trial and Kellogg preserved objections to much of the misconduct. The court finds that Nike's conduct at trial and throughout this litigation revealed a strategy calculated to misdirect the jury's focus from the proper comparison of the patented design to the design on Nike's accused hats to an improper comparison of the whole hat shown in Kellogg's

---

[8]Crucial to the analysis is the evidence of lack of vertical-axis symmetry of the Nike vents. See Filing No. 324, Tr., Vol. II at 288. Mr. Taguchi testified that the vents of the accused hats have one straight edge and one curved edge. *Id.* at 286-87 (describing half-moon or "shard" shapes. Although Mr. Taguchi testified that the straight edge is curved when it is shown on a curve, *see id.* at 288-89, the jury was not instructed to limit its "ordinary observer" determination to hats as worn or as shown in a particular fashion.

patent to Nike's accused hats.  Nike made attempts to lead the jury to a product-to-product comparison that was contrary to established law and to the court's instructions.  Nike was obliged to either accept the court's claim construction ruling as the law of the case or to proceed with an interlocutory appeal.  Instead, Nike chose to pursue a strategy of distorting the court's claim construction and attempting to lead the jury to an improper interpretation of the claimed invention that would correspond to its proposed, but rejected, claim construction.

Although the record is replete with Nike's attempts to confuse and obfuscate the issues, whether that misconduct was so prejudicial to amount to a miscarriage of justice is another question.  Nike's repeated attempts to inject its proposed claim construction into the case were transparent and generally unavailing.  The record shows that the court conveyed several curative and cautionary instructions to the jury.  The jury was told several times to focus on the design and not on the hat.  The court made it clear to the jury that discussion of specific details of the hats related to the issue of damages and not to invalidity.

The court's instructions, including the definition of design as something <u>on</u> a product, rather than in a product, along with the court's numerous limiting instructions and frequent admonishments to counsel, served to obviate any prejudice to Kellogg's case occasioned by Nike's lapses.  The court repeatedly made the proper analysis clear to the jury.[9]

---

[9]Also, to some extent, Kellogg is responsible for any jury confusion.  Kellogg failed to object to several instances of improper questioning by Nike and failed to emphasize crucial aspects of its case, most notably, the evidence that Nike's "shard-shaped" vent became a symmetrical oblong vent when placed on a curve such as a head.  Kellogg focused instead on the horizontal symmetry of the vents.  *See* Filing No. 324, Tr. Vol. II at 274.

The court finds that Nike's misconduct was not pervasive enough to have influenced the verdict and did not result in denial of a fair trial. The court was able, for the most part, to restrain Nike's abusive advocacy and to minimize its effect on the jury. Accordingly, the court finds Kellogg's motion for a new trial should be denied. As discussed below, however, the court finds that Kellogg's motion to alter or amend the judgment should be granted with respect to the award of costs.

### 2.   Attorney Fees and Costs

Kellogg requests that the court enter an order awarding Kellogg his costs and fees in connection with defending against Nike's counterclaim of invalidity. It further asks the court to alter or amend its judgment to eliminate the award of costs to Nike. Kellogg argues that Nike's disingenuous positions with respect to its '178 patent and the introduction of the "Boquist hat" justify it position.

As noted, Nike's claim of invalidity was dismissed with prejudice, over objection by Kellogg, on the eve of trial. Nike's counsel continued to attack the validity of the '190 Patent in the trial. The court finds that Nike's conduct in asserting and pursuing the claim of invalidity was frivolous and was intended to delay the proceedings, obfuscate the issues and increase Kellogg's costs of litigation. Its actions in pursuing the counterclaim of invalidity long after it was shown not to be meritorious amounts to vexatious conduct. Defending against Nike's claims of invalidity was a considerable financial burden to Kellogg in terms of attorney time, firm resources, and out-of-pocket expense. Nike's adamant

denial that there was any misconduct in this case displays the same arrogance that has colored this case almost from its inception.[10]

The court has already concluded that Nike engaged in litigation misconduct during the trial. That misconduct lends credence to the conclusion that Nike continued to pursue the invalidity claim vexatiously. Vexatious conduct includes conduct that clouds the issues and complicates the court's tasks. The deposition testimony and expert report of Nike's purported invalidity expert was crafted to fit Nike's infringement theory and that theory was legally and factually untenable in light of the court's claim construction. Nike pursued a strategy of giving superficial recognition to the court's claim construction rulings, while continuing to press its own interpretation of the claim.

The court finds that Nike's conduct makes this an exceptional case under 35 U.S.C. § 285 and that an award of attorney fees and costs reasonably related to the invalidity claim is warranted. Allowing recovery of only those fees reasonably incurred in defending the invalidity claim will ensure that the amount of the award bears some relation to Nike's conduct. Moreover, the award is authorized under Fed. R. Civ. P. 41 and 54(d).

For the same reasons, the court finds taxation of costs against Kellogg is not appropriate. In light of Nike's unjustified prosecution of the invalidity claim, its litigation misconduct and borderline abusive advocacy, costs cannot justly be assessed against

---

[10]Nike's motion to strike is another unfortunate example of Nike's litigation strategy, which appears designed to overburden the opposition with gratuitous, nonmeritorious and inconsequential motions. Nike asks the court to strike Kellogg's reference to Fed. R. Civ. P. 41 as the basis for a fee award and its argument regarding the parties' disparate financial positions because they were raised for the first time in Kellogg's reply brief. In light of Nike's conduct throughout the litigation, the court finds enforcement of a hypertechnical procedural rule against Kellogg would exalt form over substance. Rule 41 is applicable to Kellogg's motion for fees and the parties' disparate financial condition is relevant to the inquiry. The court will consider those arguments. Accordingly, the court finds Nike's motion to strike should be denied.

Kellogg.  Although Nike is the prevailing party with respect to infringement, Kellogg is the equivalent of a prevailing party with respect to the invalidity claim.   Under these circumstances, the court will exercise its discretion under Rule 54 to deny an award of costs to Nike.  Accordingly,

IT IS ORDERED:

1.  Plaintiff's renewed motion for judgment as a matter of law, or, in the alternative, for a new trial (Filing No. 328) is denied.

2.  Plaintiff's restricted motion for attorney fees and to alter or amend the judgment (Filing No. 330) is granted.

3.  Kellogg is awarded attorney fees incurred in connection with, and reasonably related to, defending against Nike's counterclaim, including the filing of the motion for fees.

4.   Kellogg is directed to file a request for fees, together with supporting documentation, within fourteen (14) days of the date of this opinion; Nike shall have seven (7) days from the date Kellogg files its submission with the court to file any objection thereto.

5.  Defendant's motion to strike portions of plaintiff's restricted reply (Filing No. 343) is denied

6.  Plaintiff's motion to review the actions of the taxation clerk (Filing No. 351) is denied as moot.

7.  The clerk's taxation of costs in the amount of assessment of $61,651.94 (Filing No. 350) is set aside.

8.  The court's Judgment (Filing No. 320) including costs is vacated.

9.  Judgment will be entered this date in accordance with this Memorandum and Order.

DATED this 30th day of September, 2009.

BY THE COURT:


s/Joseph F. Bataillon
CHEIF DISTRICT JUDGE

---

*This opinion may contain hyperlinks to other documents or Web sites.  The U.S. District Court for the District of Nebraska does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide on their Web sites.  Likewise, the court has no agreements with any of these third parties or their Web sites.  The court accepts no responsibility for the availability or functionality of any hyperlink.  Thus, the fact that a hyperlink ceases to work or directs the user to some other site does not affect the opinion of the court.