IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| GERALD A. KELLOGG, an Individual,<br><br>Plaintiff,<br><br>v.<br><br>NIKE, INC., an Oregon Corporation, and NIKE USA, INC., an Oregon Corporation,<br><br>Defendants. | ) | 8:07CV70<br><br>MEMORANDUM OPINION AND ORDER |

This matter is before the court on the plaintiff Gerald A. Kellogg's motion for sanctions, Filing No. 363, motion for fees and costs, Filing No. 366, and motion to deem certain filings restricted, Filing No. 372. The motion to deem certain filings restricted will be granted.[1] In an earlier order, Kellogg was awarded fees and costs in connection with defending against the counterclaim filed by defendants Nike, Inc. and Nike USA, Inc. (collectively, "Nike"). *See* Filing No. 360, Memorandum and Order ("Mem. & O.") at 23. The court found that Nike's litigation conduct warranted a finding that the case was exceptional under 35 U.S.C. § 285 and also ruled that Kellogg was a prevailing party with respect to the invalidity counterclaim. *Id.* at 22-23. Kellogg seeks recovery of $993,966.16 in fees and $71,796.43 in costs incurred in connection with, and reasonably related to, defending Nike's counterclaim of invalidity. Filing No. 369, Index of Evidence (Evid.),

[1]At counsel's request, the Clerk of Court provisionally restricted access to the documents. *See* Filing No. 370, docket entry by clerk.

Exhibit (Ex.) 1, Declaration of Mark J. Peterson ("Petersen Decl.") at 8 (369-2);[2] Ex. M, Summary of Totals (369-6); Filing No. 370, Index Of Evid. (continued), Ex. 2, Decl. of G. Thomas Williams ("Williams Decl.") at 8 (370-2); Filing No. 375, Ex. A, Kellogg Reply Brief at 1,13 (revised calculation) (375-2).[3] Kellogg also seeks $32,401.00 for attorneys' fees in connection with preparation of the application for fees. Filing No. 369, Index of Evid., Ex. 1, Petersen Decl. at 10 (369-2), Ex. N, Time and Fee Summary (369-6); Filing No. 370, Index of Evid., Ex. 3, Supplemental Declaration of G. Thomas Williams (370-4) at 1.

Kellogg seeks to recoup the fees he contends are directly related to defending against the invalidity counterclaim, as well as some fees that it incurred in the prosecution of its infringement claim that he contends are inextricably intertwined with and reasonably related to the invalidity issue. Filing No. 369, Index of Evid., Ex. 1, Petersen Decl. (369-2) at 6-8; Filing No. 370, Index of Evid. (Cont.), Ex. 2, Williams Decl. (370-2) at 5-6. Kellogg has identified those fees that are directly related, reasonably related, and unrelated to the defense of the counterclaim. *See* Filing No. 369, Ex. 1, Petersen Decl., Exs. A-E, G-M (369-3 - 369-6); Filing No. 370, Index of Evid. (Cont.), Ex. 2, Williams Decl. at 6, Exs. A & B (370-2).

---

[2]The references in parentheses are citations to the court's Case Management/ Electronic Filing ("CM/ECF") system and refer to the filing number and document and part number which appear in the computer-generated header at the top of the document.

[3]Originally, Kellogg sought $1,000,227.58 in fees and $73,345.96 in costs based on a calculation of the total cost of the litigation of $1,463,355.03. *See, e.g.*, Filing No. 369, Index of Evid., Petersen Decl., Ex. M (369-6). Since he filed his original application, Kellogg has conceded that certain sums are not recoverable and corrected errors in his request. Filing No. 375, Ex. A, Kellogg Reply Brief at 1, 13 (375-2). The original requested award is roughly apportioned as $554,336.80 in fees and expenses for the law firms of Koley Jessen and Stinson Morrison Hecker of Omaha, Nebraska, and approximately $510,721.24 in fees and expenses for the law firm of McGarry Bair, PC of Grand Rapids, Michigan. Filing No. 369, Index of Evid, Ex. 1, Petersen Decl. at 8 (369-2); Filing No. 370, Index of Evid. (Cont.), Ex. 2, Williams Decl. at 6 (370- 2).

Kellogg has submitted detailed time sheets showing the respective hours expended and hourly rates charged by his attorneys, ranging from $175 per hour to $335 per hour for attorneys and $100 to $140 per hour for paralegals. *See* Filing No. 369, Index of Evid., Ex. 1, Peterson Decl., Exs. A & C (369-2), & E (369-3); Filing No. 370, Index of Evid. (Cont.), Ex. 2, Williams Decl., Ex. A (370-2). Kellogg has also produced evidence of expenses and evidence of the skills and experience of each attorney. *See* Filing No. 369, Ex. 1, Peterson Decl., Ex. J (369-5 & 369-6); Filing No. 370, Williams Decl., Exs. B & C (370-2 & 370-3). In addition, Kellogg has presented affidavits showing that the hourly rates and hours expended on the litigation are reasonable in the Omaha, Nebraska, and Grand Rapids, Michigan, areas given the complexity of the litigation, the importance of the issues, the skill of the attorneys, and the quality of work. *See* Filing No. 370, Index of Evid. (Cont.), Ex. 4, Declaration of John Passarelli (370-5); Ex. 5, Declaration of Richard Gaffin (CM/ECF Doc. # 370-6). Kellogg further submits American Intellectual Property Law Association (AILPA) 2009 billing surveys on typical patent-attorney rates to support the reasonableness of the requested hourly rates. Filing No. 370, Index of Evid. (Cont.), Ex. 2, Williams Decl., Ex. D (370-3). Finally, Kellogg has shown that the total sum sought for fees would be regarded as a reasonable amount to spend on the defense of an invalidity counterclaim in the Grand Rapids, Michigan, and Omaha, Nebraska, areas. Filing No. 370, Index of Evid. (Cont.), Ex. 2, Williams Decl. at 8 (370-2).

Nike does not challenge the reasonableness of the billing rates of Kellogg's counsel, the overall time expended in this case, or Kellogg's calculation of the total fees and costs expended in the litigation. *See* Filing No. 374, Nike's Brief at 14. Nike argues, however, that Kellogg's requested award of over 75% of the total fees incurred throughout the entire

litigation is excessive in view of Kellogg's limited success. *Id.* at 19. It contends that a reasonable fee award to Kellogg would not exceed $149,000.00, plus fees reasonably incurred in connection with the fee application. *Id.* at 1. Nike's proposed fee award is predicated on three potential methods of calculation: first, Nike proposes that the application of a lodestar methodology that adjusts for the degree of plaintiff's success would result in an award of $148,110.19; second, using a bottom-up methodology that captures only the fees that are directly related to the invalidity issue would result in an award of $153,045.27;[4] and third, Nike proposes that an award of between $146,335 and $149,000 would be an appropriate calculation of fees and costs reasonably related to the invalidity counterclaim based on the opinion of Jeffrey D. Harty, an experienced patent litigator. Filing No. 374, Evid. Index (374-2), Exs. B-K, Charts of Related and Unrelated fees (374-15 - 374-24); Ex. L, Declaration of Jeffrey D. Harty ("Harty Decl.") at 8-10 (374-25). Harty states that he would normally expect to budget approximately 10% to 30% of the total fees and costs to defend a validity challenge.[5] *Id.*, Ex. L, Harty Decl. at 8 (374-25). Nike also argues that the costs directly related to the invalidity defense amount to only $6,616.58 and that a reasonable amount of fees incurred in connection with the fee application would be $34,498.00.[6] *See* Filing No. 374, Brief at 27-30, 23 n.14 (374); Ex. K,

[4]Recovery under this method is limited to time entries that specifically refer to invalidity, any entries that relate to Nike's invalidity expert, Mr. Boquist, and to the *Daubert* motion directed to Mr. Boquist.

[5]Mr. Harty advocates the low end of this range because Kellogg did not retain an expert on invalidity and Nike withdrew its counterclaim prior to trial. Filing No. 374, Evid. Index, Ex. L, Harty Decl. at 8 (374-25).

[6]Nike argues that only the following expenses are reasonably related to invalidity: $440.01 for airfare to the Boquist deposition in Spokane, Washington; $234.16 for Churchill's Steakhouse in Spokane; $70.87 for [illegible] Bistro on 7/14/08; $8.95 for Wi Fi access in Spokane; $675.34 for the hotel in Spokane; $53 for a meeting room for the Boquist deposition; $280.25 for a rental car in Spokane; $13.52 for binders; $168.94 Kinko's charge for "Boquist Report"; $3,042.79 for court reporter charges for the Boquist deposition; and

Chart - Fees Unrelated to Preparation and Filing of Application for Costs and Fees (374-24).

In his motion for sanctions, Kellogg argues that Nike's egregious litigation misconduct warrants the sanction of a monetary award to Kellogg that would be the financial equivalent of a default judgment against Nike. He seeks an award of up to $8,300,000.00 as a sanction under the authority of Fed. R. Civ. P. 16 and 37, 28 U.S.C. § 1927, and the court's inherent power. Filing No. 364, Kellogg's Brief. Nike argues that sanctions in addition to those awarded under 35 U.S.C. § 285 are neither authorized nor appropriate.

I. Discussion

A. Law

The methodology of assessing a reasonable award under 35 U.S.C. § 285 is vested in the discretion of the district court. *Takeda Chem. Indus., Ltd. v. Mylan Laboratories, Inc.,* 549 F.3d 1381, 1390 (Fed. Cir. 2008) (affirming an award of $16,000,000 in fees in a misconduct case). The determination will be affirmed unless "the district court's decision is 'clearly unreasonable, arbitrary or fanciful, or based on an erroneous conclusion of law or fact.'" *Id.* (quoting *Yamanouchi Pharmaceutical Co., Ltd. v. Danbury Pharmacal, Inc.,* 231 F.3d 1339, 1346 (Fed. Cir. 2000)). Courts recognize "many varieties of misconduct that make a case exceptional for a fee award," including willful infringement, inequitable conduct before the Patent and Trademark Office, offensive litigation tactics, vexatious or unjustified litigation, or frivolous filings. *Yamanouchi,* 231 F.3d at 1346-47. The district

$1,628.75 for the videographer. Filing No. 374, Ex. K, Chart - Fees Unrelated to Preparation and Filing of Application for Costs and Fees (374-24).

court is "in the best position to know how severely [a party's] misconduct has affected the litigation." *Takeda*, 549 F.3d at 1390-91 (quoting *Beckman Instruments, Inc., v. LKB Produkter AB*, 892 F.2d 1547, 1553 (Fed. Cir. 1989)); *Mathis v. Spears*, 857 F.2d 749, 754 (Fed. Cir. 1988) (stating that "[t]he district court's inherent equitable power and informed discretion remain available in determining the level of exceptionality rising out of the offender's particular conduct, and in then determining, in light of that conduct, the compensatory quantum of the award, including the amount of attorney fees, what if any expenses shall be included, and the rate of prejudgment interest, if any, on the award"). The awarding of attorney fees pursuant to 35 U.S.C. § 285 is an issue unique to patent law and is therefore determined under the law of the Federal Circuit. *See Special Devices, Inc. v. OEA, Inc.*, 269 F.3d 1340, 1343 (Fed. Cir. 2001).

The calculation of a reasonable attorney fee may begin with the lodestar figure and relies upon the district court's exercise of discretion to increase or decrease that figure in light of other factors. *See View Eng'g, Inc. v. Robotic Vision Sys., Inc.*, 208 F.3d 981, 988 (Fed. Cir. 2000) (upholding district court's reduction of lodestar after consideration of relevant factors to reach final sanction award). The "lodestar" is determined by multiplying the number of hours reasonably expended by reasonable hourly rates. *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983); *Water Technologies Corp. v. Calco*, Ltd., 850 F.2d 660, 674 (Fed. Cir. 1988) (involving a patent case).

The purpose of 35 U.S.C. § 285 is to compensate the prevailing party for its monetary outlays in the prosecution or defense of the suit and those fees include the "sums that the prevailing party incurs in the preparation for and performance of legal services related to the suit." *Junker v. Eddings*, 396 F.2d at 1365 (quoting *Central Soya Co. v. George A. Hormel*

*& Co.*, 723 F.2d 1573, 1578 (Fed. Cir. 1983)). Although the amount the client paid the attorney is one factor for the court to consider in determining a reasonable fee, it does not establish an absolute ceiling—the determination of a reasonable attorney fee requires the court to consider all the relevant circumstances in a particular case. *Id.* The evidence usually analyzed in determining a reasonable attorney fee includes hourly time records, full expense statements, documentation of attorney hourly billing rates in the community for the particular type of work involved, the attorney's particular skills and experience, and detailed billing records or client's actual bills showing tasks performed in connection with the litigation. *Id.* at 1366.

The court should also take into account the amount of the recovery and the results obtained by the lawsuit. *See Slimfold Mfg., Inc. v. Kinkead Indus., Inc.*, 932 F.2d 1453, 1459-60 (Fed. Cir. 1991). Consideration may also be given to the experience, reputation and ability of the attorneys as well as to the difficulty of the issues presented and the amount at stake in the litigation. *Hensley v. Eckerhart*, 461 U.S. 424, 429-30 n. 3 (1983) (referring to the twelve factors listed in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir.1974)).[7]

To aid a court's calculation of the lodestar, the prevailing party must provide contemporaneous time records, affidavits, and other materials to support its application for the amount of reasonable hours expended. *PPG Indus., Inc. v. Celanese Polymer Specialties Co.*, 840 F.2d 1565, 1570 (Fed. Cir. 1988) ("insufficient documentation may

[7]The *Johnson* factors are: (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. *Johnson*, 488 F.2d at 717-19.

warrant a reduction in the fees"). A reasonable hourly rate for attorney fees is a rate that is "in line with those [rates] prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Blum v. Stenson*, 465 U.S. 886, 896 & n. 11 (1984). The community that a district court should consider to determine the lodestar figure is normally the district in which the court sits." *See id.* In determining a reasonable rate, a court may refer to American Intellectual Property Law Association ("AIPLA") surveys. *See Mathis v. Spears*, 857 F.2d at 755 (Fed. Cir. 1988).

With respect to the award of costs, the law of the regional circuit applies. *Manildra Milling Corp. v. Ogilvie Mills, Inc.*, 76 F.3d 1178, 1184 (Fed. Cir. 1996) ("The decision of whether to award costs to a prevailing party implicates considerations not unique to the patent law, such as the litigants' behavior at trial. "). Taxation of costs in favor of a prevailing party is authorized by 28 U.S.C. § 1920 and governed by Federal Rule of Civil Procedure 54(d). *Craftsmen Limousine, Inc. v. Ford Motor Co.*, 579 F.3d 894, 896 (8th Cir. 2009). A prevailing party is presumptively entitled to recover all of its costs. *Id.* at 897.

Section 1920 of Title 28 enumerates the expenses that a federal court may award as costs under its Rule 54(d)(1) discretionary authority. 28 U.S.C. § 1920; *Crawford Fitting Co. v. J.T. Gibbons, Inc.*, 482 U.S. 437, 441-42 (1987). Section 1920(2) authorizes the award of costs for fees for transcripts "necessarily obtained for use in the case." 28 U.S.C. § 1920(2).

Courts possess inherent powers to sanction litigation misconduct. *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43-45 (1991). A court may use its inherent power to "assess attorney's fees when a party has 'acted in bad faith, vexatiously, wantonly, or for oppressive reasons.'" *Id.* at 45 (quoting *Alaska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240,

258-259 (1975)). However, "inherent powers must be exercised with restraint and discretion." *Id.* at 44.

Not every case qualifying as exceptional under 35 U.S.C. § 285 will qualify for sanctions under the court's inherent power. *Amsted Indus. Inc. v. Buckeye Steel Castings Co.*, 23 F.3d 374, 378 (Fed. Cir. 1994). To the contrary, a district court may resort to its inherent power to impose sanctions only in those highly unusual cases in which the pertinent statutory remedies are plainly inadequate to address the misconduct at issue. *Id.* at 379 (stating that courts "should only resort to further sanctions when misconduct remains unremedied by those initial tools."). Routine use of inherent authority to impose sanctions in addition to those authorized by applicable statutes risks contravening Congress's judgment as to what sanctions are appropriate for particular misconduct. *Id.*

B. Analysis

The court finds that an award of attorneys' fees in the amount of $355,354.00 is reasonable in this case. Nike's continued assertion of its counterclaim undoubtedly required Kellogg to undergo considerable discovery and expense. Until the morning the trial began, the parties had operated under the assumption that the test for infringement included the "point of novelty" test. *See* *Egyptian Goddess, Inc. v. Swisa, Inc.*, 543 F.3d 665, 670 (Fed. Cir. 2008) (en banc) (noting that a line of cases beginning with *Litton Sys., Inc. v. Whirlpool Corp.*, 728 F.2d 1423 (Fed. Cir.1984), required a design patent holder to show not only proof of similarity, but that the accused device "appropriate[s] the novelty in the patented device that distinguishes it from prior art."). In *Egyptian Goddess*, the Federal Circuit abrogated the point-of-novelty test in favor of the "ordinary observer test with reference to prior art designs" test, in which the ordinary observer compares the claimed and accused designs in light of the prior art. *Id.* at 678-79 (noting that "the ordinary observer test does not present the risk

of assigning exaggerated importance to small differences between the claimed and accused designs relating to an insignificant feature simply because that feature can be characterized as a point of novelty"). Before the point-of-novelty test was abandoned, issues of infringement were more closely intertwined with issues of invalidity of a design as obvious or anticipated by the prior art.

The court finds it is difficult to quantify the extent of the interrelationship with precision, but finds that Nike's continued assertion of its invalidity counterclaim increased Kellogg's costs by a substantial amount. Nevertheless, in view of Kellogg's limited success in the overall litigation, the court finds the fee award must be adjusted downward to some extent. The court has found litigation misconduct by Nike, but also found that the misconduct did not significantly affect Kellogg's prospects of success in the litigation. Kellogg would have had to undertake much of the same discovery to prove its infringement case.

Based on its familiarity with the litigation, the court finds that an award to Kellogg in the amount of one third of its overall fees is appropriate in this case. Kellogg has submitted affidavits showing that counsels' hours and rates are reasonable in this community and Nike does not dispute that fact. Notably, Nike's fee expert opines that he would normally expect to budget 10 to 30% of total fees and costs to defend a validity challenge. Accordingly, the court will award attorneys' fees to Kellogg in the amount of $355,354.00.

The court further finds that Kellogg, as a prevailing party, is entitled to recover the costs attributable to defending against the counterclaim under 28 U.S.C. § 1920. Again, although difficult to quantify with precision, the court finds approximately one-third of the overall costs are attributable to the invalidity counterclaim. Accordingly, costs in the amount of $23,932.00 will be awarded to Kellogg. The court has already held that Kellogg is entitled to the fees and costs it incurred in preparing the fee application. Filing No. 360, Mem. & O.

at 23. Kellogg seeks a total award of $32,401.00 in fees for preparing the application ($23,903.50 for Stinson Morrison Hecker and $8,497.50 for McGarry Bair). The fees sought represent 116.2 hours of work by attorneys and paralegals at rates ranging from $140 per hour to $340 per hour. The court finds the hours expended and rates charged are reasonable for an application of this magnitude and complexity. Nike concedes that a fee award of $34,498.00 is reasonable for the preparation of the fee application.[8] The court has reviewed Kellogg's submissions in connection with the fee application and finds the fees sought are adequately supported and Kellogg's fee request should be granted.

The court finds that Kellogg's motion for additional sanctions should be denied. The award of attorneys' fees under 35 U.S.C. § 285 is the appropriate remedy for the litigation abuses present in this case. *See, e.g., i4i Ltd. P'ship, v. Microsoft Corp.*, — F.3d —, —, 2009 WL 4911950, *24 n. 5 (Fed. Cir. Dec. 22, 2009) (enhanced damages can be appropriate in a willful infringement case, but other tools, including Section 285, are more appropriate in mine-run cases). Accordingly,

IT IS ORDERED:

1. The plaintiff's motion for sanctions (Filing No. 363) is denied.
2. The plaintiff's motion for fees and costs (Filing No. 366) is granted.
3. Plaintiff is awarded attorneys fees under 35 U.S.C. § 285 in the amount of $355,354.00.
4. Plaintiff is awarded costs in the amount of $23,932.00.

---

[8] Nike erroneously contends that Kellogg seeks fees in the amount of $55,027.50, and then subtracts $20,529.50 from that sum as related only to the motion for sanctions to arrive at the amount of $34,498.00. Filing No. 374, Nike Brief at 23 n.14.

5. Plaintiff is awarded $32,401.00 in attorneys fees for the preparation of the application for fees.

6. The plaintiff's motion to deem certain filings restricted (Filing No. 372) is granted.

7. A judgment for attorneys fees and costs in conformity this memorandum opinion will be issued this date.

DATED this 20th day of January, 2010.

BY THE COURT:

s/ Joseph F. Bataillon
Chief District Judge

---

*This opinion may contain hyperlinks to other documents or Web sites. The U.S. District Court for the District of Nebraska does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide on their Web sites. Likewise, the court has no agreements with any of these third parties or their Web sites. The court accepts no responsibility for the availability or functionality of any hyperlink. Thus, the fact that a hyperlink ceases to work or directs the user to some other site does not affect the opinion of the court.